THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* DARNELL NASH (Impleaded), Defendant-Appellee.

First District (5th Division)   No. 78-1724

Opinion filed October 26, 1979.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Rimas F. Cernius, and Terence P. Gillespie, Assistant State's Attorneys, of counsel), for the People.

Ralph Ruebner, of State Appellate Defender's Office, of Chicago, for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

The State appeals pursuant to Supreme Court Rule 604(a)(1) (Ill. Rev. Stat. 1977, ch. 110A, par. 604(a)(1)) from the order which granted defendant's motion to quash his arrest and suppress all statements and physical evidence which resulted therefrom. On appeal, the State contends that: (1) probable cause existed for defendant's warrantless arrest; and (2) even if the arrest were made without probable cause, the statements and physical evidence were sufficiently attenuated from the arrest to purge the initial taint. We affirm.

On July 4, 1976, Marie Gibson, while on her front porch, was killed by a shot from a passing car. Defendant was arrested and indicted for the murder of Ms. Gibson. Ill. Rev. Stat. 1975, ch. 38, par. 9—1.

The following witnesses testified at the suppression hearing: the defendant; Assistant State's Attorney Raymond Prosser; and Chicago police sergeants Dennis Jurkowski and Percy L. Hollins. A review of their testimony reveals the following pertinent evidence.

On July 4, 1976, at about 8 p.m. a disturbance occurred in front of Ms. Bessie King's house located at 1436 South Trumbull. The driver of a car which had been parked in front of the house pulled away and drove over Ms. King's foot. Bruce Jones, Ms. King's son, witnessed the incident. He had an altercation with the driver and chased the car until it got out of the area. He described the car as a late model, brown, 4-door Oldsmobile or Buick. At about 11 p.m. the same night, a car passed by the house and an occupant of the car fired a shot which killed Ms. Gibson. Willie Adams heard the shot and observed a late model, brown Oldsmobile or Buick going north on Trumbull. A second witness, Laureen Smith, described the

car as maroon with a dark top and containing five or six male Negroes. In a police report the car was described as a black over maroon, 1973-74, four-door Oldsmobile. The license plate number of the car was not reported. Ms. Smith had also been present at the earlier incident but was not certain that the same people were involved in the two incidents. Sergeant Hollins learned that the victim and Ms. King, whose foot had been run over, resembled each other physically.

Bruce Jones did not witness the shooting but spoke with people who had and told Officer Lemeka that he believed the same car was involved in both incidents. Officer Lemeka gave Jones his card and told him to call if he saw the car again.

On July 6, 1976, at about 10 p.m. Sergeant Jurkowski received a call from Bruce Jones. He was familiar with the Gibson homicide from a review of the police reports and knew about Bruce Jones' connection with the case. He also knew that Jones had told Officer Lemeka that after talking with witnesses to the shooting, he believed that the car he had chased was the same one involved in the shooting. Jones told Jurkowski that he had just seen the car and gave him its license number and location. Jurkowski checked the license number and learned that it was registered to A. D. Hern at 1509 South Ridgeway. He and his partner went to the address but could not locate the car. After an hour or two, they returned to their office and received a message that the car was back at 15th and Ridgeway. They returned to the area at about 4:30 a.m. and saw a car bearing the reported license number and matching the description given them. A later police report showed that the car was a 1971 four-door Oldsmobile, rust-colored with a blue right front fender. They checked the names on the mailboxes at 1509 South Ridgeway but could not find an A. D. Hern. Jurkowski knocked on an apartment door and asked the resident if she knew where Hern lived. She did not know Hern but knew that the car belonged to a resident of 1508 South Ridgeway. The officers went to that address and knocked on the door. A man answered, and the police identified themselves and asked if A. D. Hern lived there. The man initially replied that Hern did not live there. However, when the officers told him they were investigating a homicide and were looking for the owner of the car parked out front, he said, "Well, okay. My name is A. D. Hern" and "Wait a minute. The plates are mine, but the car is not mine." He then told the police that defendant was the owner and was sleeping in the back bedroom. The police asked if it would be all right for them to enter and talk to defendant and Hern replied, "Certainly."

The police woke defendant and after he admitted that the car belonged to him, they told him they were investigating Ms. Gibson's homicide. Defendant and Hern were both placed under arrest and

advised of their rights. Defendant was not shown a warrant at the time of his arrest.

Defendant was taken to a police station at about 6:20 a.m. Defendant testified that he was handcuffed to a wall for three hours and threatened with a strap and told if he "didn't tell, they were going to kick me downstairs and do me in." He spoke to police but denied making a statement concerning the crime. At about 10 a.m. he made an oral statement to Assistant State's Attorney Prosser. He was then taken back to his apartment by the police, involuntarily by defendant's account and voluntarily according to the police and Prosser. There, a .22-caliber handgun was taken from a drawer in his bedroom. He was then brought back to the station. At about 11:20 a.m. he made a statement to Prosser which was transcribed by a court reporter. Defendant initialed each page of the statement and signed it.

Sergeant Jurkowski stated that the only reason he went to 1509 South Ridgeway was the information furnished by Jones. No witness to the shooting directed him to that address. He also stated that the police report described the car involved in the shooting as a black over maroon, 1973-74 Oldsmobile 4-door, and the car he found was brown with a light tan top.

The trial judge ruled that the police lacked probable cause to arrest defendant and that the gun and all statements made by defendant were not attenuated from the illegal arrest. Defendant's arrest was quashed and the gun and all statements suppressed. This appeal followed.

OPINION

■■ The primary inquiry in this appeal is whether probable cause existed for defendant's arrest. Whether or not probable cause exists in a particular case depends on the totality of the facts and circumstances known to the officers when the arrest was made. (*People v. Robinson* (1976), 62 Ill. 2d 273, 342 N.E.2d 356; *People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280.) In deciding the question of probable cause the courts deal with probabilities, which are the factual and practical considerations of everyday life on which reasonable men, not legal technicians, act. (*Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329; *People v. Clay.*) Courts recognize that police officers must act upon a quick appraisal of the data before them and that the reasonableness of their conduct must be judged on the basis of their responsibility to prevent crime and to catch criminals. (*People v. Robinson*; *People v. Dickerson* (1979), 69 Ill. App. 3d 825, 387 N.E.2d 806.) However, arrests cannot be made on mere suspicion that an individual may have committed an offense. (*People v. Fletcher* (1978), 66 Ill. App. 3d 502, 383

N.E.2d 1285; *People v. Gabbard* (1979), 67 Ill. App. 3d 945, 385 N.E.2d 366.) Probable cause exists if a reasonable and prudent man in possession of the knowledge which has come to the arresting officer would believe that the person to be arrested had committed a crime. *People v. Denham* (1968), 41 Ill. 2d 1, 241 N.E.2d 415, *cert. denied* (1969), 394 U.S. 1006, 22 L. Ed. 2d 784, 89 S. Ct. 1605; *People v. Fletcher.*

■ A review of the facts known to the arresting officers at the time of defendant's arrest shows that probable cause did not exist. The only reason the officers went to 1509 South Ridgeway was the call received from Bruce Jones informing them of the location of the car. However, Jones had not witnessed the shooting and could not identify the car. It was only through talking with witnesses to the shooting that Jones concluded that the car he had seen earlier was involved in the shooting. Ms. Smith had witnessed both occurrences but was uncertain if the same people were involved. Her description of the car involved in the shooting differed from Jones' description.

Once at 1509 South Ridgeway, the officers did not know for whom they were looking. No physical description of the shooter had been given except that he was a black male. The registration check merely revealed that the plate was registered to A. D. Hern at 1509 South Ridgeway. Unable to find Hern at that address, the police went to the building indicated by the woman. There, they found Hern who told them that defendant owned the car in which the police were interested. They woke defendant and learned that he did own the car. At that time they knew defendant owned a car which had been identified by a nonwitness to the crime being investigated. While these facts may raise a suspicion of defendant's involvement in the shooting, they are insufficient to lead a reasonably prudent man to believe that defendant had been involved in Ms. Gibson's death.

■■ The State contends that probable cause existed for defendant's arrest based upon Hern's admission that he was allowing his plates to be used on defendant's car in clear violation of section 4—104 of the Illinois Vehicle Code. (Ill. Rev. Stat. 1977, ch. 95½, par. 4—104.) Additionally, the State argues that since Jones did witness the earlier incident, his identification of the vehicle and the determination of its owner gave the officers probable cause to arrest defendant for the battery of Ms. King. However, it is clear from the arresting officer's testimony that he was investigating only Ms. Gibson's homicide, and the State conceded at oral argument that defendant was not arrested or charged for these other offenses. The fact that, in retrospect, probable cause existed to arrest defendant for another offense cannot be used to justify the illegal arrest in this case.

■ Having determined that defendant's arrest was illegal, we must

determine whether any intervening circumstances existed which dissipated the taint of the arrest, thereby allowing the introduction of the otherwise inadmissible evidence at trial. (*Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254; *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.) Once defendant establishes the primary illegality of the arrest and shows its connection with the alleged fruits of the illegality, the prosecution has the burden of establishing by clear and convincing evidence that the challenged evidence was obtained by means sufficiently distinguishable to be purged of the primary taint. (*Brown v. Illinois*; *People v. Wilson* (1975), 60 Ill. 2d 235, 326 N.E.2d 378.) Among the factors to be considered are whether *Miranda* warnings were given, the temporal proximity of the arrest and statement, the presence of intervening factors, and the purpose and flagrancy of the official misconduct. *Brown v. Illinois.*

There were three separate pieces of evidence suppressed by the trial court: (1) a statement made to the police at about 6 or 7 a.m.; (2) the gun recovered from defendant's home; and (3) the written statement made at about 11 a.m. In its extensive and carefully explained findings, the trial court found that although the first statement made to the police was voluntary and that *Miranda* warnings were given at the time of arrest, the lack of any intervening circumstances and an element of purposefulness on the part of the police failed to attenuate the taint of the illegal arrest. Therefore, the first statement was suppressed.

The court then ruled that the gun and later statements to Assistant State's Attorney Prosser were also products of the illegal arrest and a result of the earlier statement by defendant. The State argues that since defendant denied making any statement to the police in the morning, the court erroneously ruled that the recovery of the gun and later statements were caused by a nonexistent statement. The record does not support this position. Defendant testified that he spoke to the police during the early morning but did not give them a statement. Officer Jurkowski testified that he spoke with defendant at about 5:30 a.m. and in response to his questions, defendant agreed to show him where the gun was. Surely such a statement would be an admission of guilt or at least complicity in the shooting. According to the officer the statement was made only an hour after the arrest. It was clearly a result of the illegal arrest. Whatever defendant meant by "statement," it is clear that evidence of guilt resulted from the early morning interrogation. It was this evidence which the trial court properly suppressed. The conversations took place at most within 2½ hours of the arrest. There were no intervening circumstances to attenuate the taint of the arrest. The first statement was properly suppressed.

The gun was also properly suppressed. From the record it appears that the gun was recovered within 4½ hours of the arrest and as a direct result of the earlier statements to the police. Defendant was in police custody the entire time and there were no intervening circumstances present to attenuate the taint of the arrest.

The statements made to the assistant state's attorney, the latter of which was transcribed and signed by defendant, were also properly suppressed. There is a question whether both statements were made after the recovery of the gun, or the oral statement made before and the written statement afterwards. In either event the suppression was proper. The statements were made within 6½ hours of defendant's arrest. He was in police custody for the entire period and no intervening circumstances existed. It does not appear from the record whether *Miranda* warnings were given to defendant before he gave the statements. Although defendant testified that he was not shown the gun at the time of his second statement, the assistant state's attorney testified that he did show defendant the gun and the court so found. Defendant's knowledge that the gun was recovered may have been a factor in his decision to confess. "Confronting a suspect with illegally seized evidence tends to induce a confession by demonstrating the futility of remaining silent." (*People v. Robbins* (1977), 54 Ill. App. 3d 298, 305, 369 N.E.2d 577, 581.) For these reasons we find the taint of the illegal arrest was not sufficiently attenuated at the time of the statements and they were properly suppressed.

The standard of review from an order deciding a motion to suppress evidence is whether the trial court's disposition was manifestly erroneous. (*People v. Clay* (1973), 55 Ill. 2d 501, 505, 304 N.E.2d 280, 282; *People v. Slonski* (1976), 40 Ill. App. 3d 319, 352 N.E.2d 292.) For the foregoing reasons, we do not find the trial court's order to be manifestly erroneous. Accordingly, the order of the circuit court quashing defendant's arrest and suppressing the evidence is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.