THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
MILTON WALKER, Defendant-Appellee.

First District (3rd Division) No. 80-348

Opinion filed December 31, 1980.—Rehearing denied February 25, 1981.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Myra J. Brown, Assistant State's Attorneys, of counsel), for the People.

Ralph Ruebner and Richard E. Cunningham, both of State Appellate Defender's Office, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

After a hearing, the trial court found that defendant's arrest was illegal and granted his motion suppressing all statements made by defendant, his testimony before the grand jury, and physical evidence taken from him as fruits of the illegal arrest. On appeal, the State contends that probable cause existed for defendant's warrantless arrest. The State further contends that even if the arrest was made without probable cause, defendant's testimony before the grand jury was sufficiently attenuated from the arrest to purge any initial taint. The pertinent facts, as gleaned from police officers' testimony at the hearing on defendant's motion to suppress, are as follows.

Curtis Lovelace was brutally beaten, robbed and strangled to death

on October 13, 1978. The crimes occurred at the Boulevard Hotel, 2801 West Warren Avenue, in the city of Chicago, where the decedent had a room. A witness informed the police that he saw Robert Sanders, who also lived in the hotel, carrying a bag of bloody clothes after the murder. Two days later, police talked to Sanders' wife who brought a bag containing the decedent's property to the police. She told the police that Sanders told her on October 14 that he and "Greek" killed an old man and took his property from him. She herself did not know the person called "Greek." Sanders' son subsequently told the police that his father said it was "Greek" who strangled the decedent.

The police were directed to a nearby tavern where they questioned patrons as to their knowledge of the identity of "Greek." The patrons indicated that they knew defendant, Milton Walker, who was called "Greek." They also stated that Walker, who was a black man, was the only person called "Greek" known to them in the neighborhood.

The police obtained Walker's photograph. They displayed this photograph to the decedent's common-law wife, who was at another tavern. She identified it as a picture of the man named "Greek." She also stated that this man was the only person known to her as "Greek" in the area. Other patrons of the tavern similarly identified Walker in the photograph as the "Greek." The patrons told police officers that "Greek" customarily slept in automobiles and could be found at a lot nearby sleeping in a Volkswagen van. On October 23, 1978, a police officer returned to the van in the vacant lot for the third time and apprehended and placed defendant under arrest. A police officer testified that he learned Sanders and "Greek" ran together, but the trial judge found the officer's testimony incredible on that point because the officer had not mentioned it in his report and had not referred to it until the judge brought it out in questioning.

Two days prior to defendant's arrest, there was a finding at a preliminary hearing of no probable cause against Sanders. One hour after defendant's arrest, he made a statement, after receiving *Miranda* warnings, which incriminated Sanders and himself. Less than two hours after his arrest, defendant was again given his warnings, after which he made another statement. Approximately 11 hours later, *Miranda* warnings were given to defendant, and he agreed to repeat his statement to the grand jury. Sixteen hours after arrest, defendant made his final statement to the grand jury. The grand jury indicted Sanders for murder and indicted defendant for armed robbery, armed violence, and aggravated battery. Defendant was neither brought before a magistrate for a determination of probable cause nor afforded counsel prior to his appearance before the grand jury. A subsequent grand jury indicted defendant for murder.

The trial court found that the police did not have probable cause for defendant's arrest. The court also found that the giving of *Miranda* warnings three times and defendant's appearance before the jury did not break the causal connection between the arrest and the statements which were the fruits of that arrest. In so concluding, the trial judge found that the State deliberately held defendant over to appear before the grand jury, as opposed to bringing him before a magistrate, and characterized this action as flagrant misconduct.

■■ The State contends that the police officers had probable cause for defendant's arrest. Whether or not probable cause exists in a particular case depends on the totality of the facts and circumstances known to the officers when the arrest is made. (*People v. Robinson* (1976), 62 Ill. 2d 273, 342 N.E.2d 356.) The question of probable cause is one of probabilities, which are the factual considerations of everyday life on which reasonable men, not legal technicians, act. (*Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329.) Probable cause exists if a reasonable and prudent man in possession of the knowledge which has come to the arresting officer would believe that the person to be arrested had committed a crime. *People v. Denham* (1968), 41 Ill. 2d 1, 241 N.E.2d 415, *cert. denied* (1969), 394 U.S. 1006, 22 L. Ed. 2d 784, 89 S. Ct. 1605.

■■ A review of the record leads us to the conclusion that the facts known to the police officer at the time of defendant's arrest were sufficient for probable cause. The police had a statement made by Sanders that he and a man named "Greek" killed the decedent. The police also reasonably believed that defendant was the "Greek" referred to by Sanders. We are mindful, in this respect, that probable cause involves the realm of probabilities. (*Draper v. United States.*) The woman who lived with the decedent identified defendant in a photograph as the man named "Greek" and the only person called "Greek" in the neighborhood. Other persons gave the police the same information. Moreover, the officers' belief was buttressed by their knowledge that "Greek" slept in automobiles near the vicinity of the murder. "Greek's" mobility makes his presence near the scene of the murder another factor which, when added to the others, gave rise to probable cause to arrest. (*Cf. People v. Colbert* (1973), 10 Ill. App. 3d 758, 295 N.E.2d 225.) Thus, Sanders' admission that he and "Greek" killed the decedent, the identification of Walker as "Greek" by the decedent's common-law wife and several other persons, the information that Walker was the only "Greek" in the area, and the discovery of Walker in his nomadic state near the hotel where the crimes occurred, all combined to give a reasonable belief to the police officers that defendant participated in the offenses.

Defendant maintains that because Sanders gave no description of the "Greek," a nexus is lacking between the "Greek" in Sanders' statement and the "Greek" arrested, and that therefore the necessary nexus is lacking between defendant and the crime. We do not agree. This court has held that a physical description by an eyewitness is not necessary to connect defendant to the crime, so long as there are some other facts indicating a probable connection. (*People v. Evans* (1976), 42 Ill. App. 3d 902, 356 N.E.2d 874; *People v. Brooks* (1976), 40 Ill. App. 3d 996, 353 N.E.2d 234; *People v. Colbert.*) In *People v. Brooks*, we held legal a warrantless arrest based on only the name and address of defendant supplied by others who were involved in the crime. In *People v. Evans*, we held that probable cause existed for a warrantless arrest based on a co-offender's statement that "Jerry", later discovered to be "Jerry Evans", was involved in the crime. In *People v. Colbert*, we held legal a warrantless arrest made by the police after connecting defendant to the name of his girl friend written on a piece of paper found near a discarded wallet which had been stolen from the victim during the crime. In the present case, we believe the police had probable cause to arrest defendant.

The holdings in *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248, and *People v. Nash* (1979), 78 Ill. App. 3d 172, 397 N.E.2d 480, on which the trial court here relied, are distinguishable from the present case. In *Dunaway*, a source told the police that a prisoner stated the prisoner and "Irving" committed the crime. In investigating the reliability of the source's information, the police received conflicting information from the prisoner that a younger brother of a friend said that the younger brother and "Irving" committed the offense. The court appropriately held that this information did not give rise to probable cause to arrest. In *Nash* there had been two separate crimes committed at the same location at different times during the same night against two women physically resembling each other. The only eyewitness to both crimes could not say that the vehicle described in the first incident was the same vehicle full of people she saw in the second incident. Nevertheless, based on another person's description of the vehicle observed in the first crime only, the police arrested defendant for the second crime. The court properly held that there was no probable cause to arrest defendant for the second crime. In contrast, the police here had probable cause to believe that Milton Walker had participated in the crime.

In view of our holding that the police had probable cause to arrest defendant, it is unnecessary to consider the issue whether defendant's voluntary statements were sufficiently attenuated from the arrest to purge any possible taint.

For the reasons stated, the order of the circuit court of Cook County

suppressing statements and evidence is reversed, and the cause is remanded for further proceedings consistent with the holdings of this opinion.

Reversed and remanded.

McGILLICUDDY, P. J., and RIZZI, J., concur.