THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DANIEL THOMPSON, Defendant-Appellant.

Second District    No. 80-834

Opinion filed June 30, 1982.

Mary Robinson, of State Appellate Defender's Office, of Elgin, and Frank J. Giampoli, of Geneva, for appellant.

Phyllis J. Perko and Gene Armentrout, both of State's Attorneys Appellate Service Commission, of Elgin, for the People.

JUSTICE HOPF delivered the opinion of the court:

Defendant Daniel Thompson was charged with the offenses of armed violence (Ill. Rev. Stat. 1979, ch. 38, pars. 33A—1, 33A—2), attempt murder (Ill. Rev. Stat. 1979, ch. 38, pars. 8—4, 9—1), and attempt armed robbery (Ill. Rev. Stat. 1979, ch. 38, pars. 8—4, 18—2). A jury in Winnebago County found defendant not guilty of attempt murder but guilty of aggravated battery (deadly weapon) (Ill. Rev. Stat. 1979, ch. 38, par. 12—4), armed violence and attempt armed robbery. Defendant was sentenced for the armed violence conviction alone to a determinate term of 15 years in the Illinois Department of Corrections.

The record reveals that just before 7 o'clock in the evening on February 18, 1980, two men entered an Ace Hardware store in Rockford. There were four people already in the store. Two employees, Marilyn Jones and her son, Michael, were near the front. Charles Wells, another employee, and Calvin Wright, a patron, were at the rear. The testimony

of these four individuals was substantially the same: The men, one of whom was identified as the defendant, walked to the rear of the store and returned to the front near the cash register. Defendant pulled a small silver gun from his coat, pointed the gun at Marilyn Jones and asked for money. She responded by saying, "You've got to be kidding." Michael Jones was kneeling down to light a kerosene heater near the cash register. As he stood up, he told his mother to give the man the money. As he spoke, defendant shot him in the stomach. Defendant then shot at Marilyn and the bullet passed through her smock but did not hit her. Both men fled to an awaiting car without taking anything.

Michael started to follow them with a shotgun but came back into the store within seconds after realizing he had been shot. Charles Wells, who had been at the rear of the store, took up the chase. He caught up with one of the men he thought was the robber at a gas station. He fired the shotgun twice at him and co-defendant Emanual Jefferson was slightly injured.

Officer Palmeri testified that he arrested defendant at about midnight, the same evening, and brought him back to the Rockford police department. There he informed defendant of his *Miranda* rights. Officer Palmeri indicated on the rights waiver form that defendant refused to sign it. He then asked defendant about the crime and defendant denied any involvement. Officer Palmeri told defendant the co-defendants were making incriminating statements about him. Defendant said that he did not believe Palmeri and he was asked if he wanted to see the co-defendants. He was taken to the room where one of the co-defendants was being questioned and allowed to see him. Palmeri then brought defendant back to the interviewing room and another co-defendant, Smith, appeared in the doorway. At this time defendant stated that he would kill him for "squealing" on him. Co-defendant Smith was then taken away. This statement was not introduced against defendant at trial.

Soon after this confrontation defendant asked Palmeri what he was going to be charged with. Palmeri told him that he was going to be charged with armed robbery and attempt murder. Palmeri testified that defendant's reply was, "Attempted murder, I should have killed him." The officers then asked defendant if he wanted to make a written statement and defendant said that he was not involved.

The trial court ruled that defendant's statement, that "I should have killed him," was admissible and defendant's motion to suppress was denied. The court did grant defendant's motion for severance.

Defendant testified that he was not involved in the incident and that he had been alone at his girlfriend's house. Defendant's explanation for why he made the statement was that he was referring to co-defendant

Dwight Smith, who had implicated him in the case. Defendant contended that he had repeatedly asserted his right to remain silent.

Defendant raises five issues on appeal. Three of those issues involve the introduction into evidence of the above described statement. He also contends that his sentence was excessive and that the armed violence statute is unconstitutional.

Defendant first contends that his motion to suppress should have been granted so as to disallow admission of the statement he made to Officer Palmeri. Defendant urges that his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, were violated because he was questioned after he refused to sign the waiver of rights form. Officer Palmeri testified that he read defendant his rights soon after he was taken into custody. Although defendant had refused to sign the rights form he was asked about the crime. He denied any involvement. The trial court ruled that the statement was admissible because the defendant had been read his rights but then he said he wanted to confront a co-defendant. Because of this, the court ruled, defendant's statement "I should have killed him" was spontaneous. Defendant's motion to suppress was denied.

Defendant contends that the officers violated his *Miranda* rights by interrogating him after he refused to sign the form and after he had stated that he did not wish to talk.

The State argues that defendant did not indicate his desire to remain silent until after the confrontation with co-defendant and after the statement in issue had been made. Therefore, it is urged, because the mere refusal to sign a "rights" form is an insufficient indication of defendant's desire to stop interrogation, the subsequent statements were properly admitted because defendant had not invoked his *Miranda* rights. *People v. West* (1975), 25 Ill. App. 3d 827, 322 N.E.2d 587; *People v. Starnes* (1972), 8 Ill. App. 3d 709, 289 N.E.2d 264.

■■ Our review of the record clearly indicates that the trial court made a finding that defendant did assert his desire to remain silent. The trial judge, in ruling on the motion to suppress, stated:

> "He says he was not advised of his rights but this officer said— police officers say he was advised of his rights. The Defendant, Palmeri stated, that he had the rights waiver which he read to him but he refused to sign it. I would believe that that probably happened.
>
> There was some attempt to question him. *He said he did not wish to talk.* The question is, should the officer then have completely abandoned this attempt to talk with Mr. Thompson and put him back in his cell.

During this period, apparently it came to pass that the Defendant, Daniel Thompson, said he would be willing to confront Dwight Smith and I think there is nothing untoward in this by the police officers.

They took Daniel Thompson to confront Dwight Smith and I believe the statements that were made at that time by Daniel Thompson were without any question were spontaneous on his part and I believe were admissible.

Therefore, the motion to suppress statements by Daniel Thompson are denied." (Emphasis added.)

The record shows that defendant asserted his right to remain silent; was asked by the police if he wanted to see co-defendants who were "squealing" on him; threatened a co-defendant; asked what crime he was charged with and responded by saying "I should have killed him." Under these circumstances, we believe defendant's statement was neither spontaneous nor voluntary.

■■ Once it has been established that defendant asserted his right to remain silent, subsequent efforts at interrogation must cease. As the court in *Miranda* stated: "At this point he has shown that he intends to exercise his fifth amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise." (*Miranda v. Arizona* (1966), 384 U.S. 436, 474, 16 L. Ed. 2d 694, 723, 86 S. Ct. 1602, 1627-28.) The confrontation with co-defendants evoked a response that was inadmissible and was the result of the type of police practices that *Miranda* was designed to protect against.

In the recent case of *Rhode Island v. Innis* (1980), 446 U.S. 291, 301, 64 L. Ed. 2d 297, 308, 100 S. Ct. 1682, 1690, the Supreme Court stated: "A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation."

In *People v. Faison* (1979), 78 Ill. App. 3d 911, 397 N.E.2d 1233, the court outlined the circumstances when interrogation can be resumed after an individual has exercised his right to remain silent. It noted that interrogation may be resumed after a complete cessation of questioning for a significant time only if *Miranda* warnings have been repeated, so that the person in custody can exercise his right to remain silent, if he so chooses, at the outset of the second period. Questioning by a different officer or questioning on a different subject matter is further indication that a defendant's rights were scrupulously honored.

Similarly, the passage of time can be significant in determining whether a defendant's rights were scrupulously honored. *People v. Fleming* (1981), 103 Ill. App. 3d 194, 431 N.E.2d 16.

■■ We are aware that statements made by a defendant after being advised of his rights can be admissible, if voluntarily given. (*People v. Dees*

(1977), 46 Ill. App. 3d 1010, 1022, 361 N.E.2d 1126.) *Dees* was a bench trial case where certain statements of defendant were held, on appeal, to be admissible because they were made before defendant asserted his fifth amendment right, and no question was pending. Unlike *Dees*, the record in the case before us makes it clear that defendant asserted his right to remain silent prior to the question about seeing co-defendant. Applying *Innis* to the case before us, we conclude that the police practices employed here constituted a continuing interrogation. For these reasons we believe the statement made by defendant was improperly admitted into evidence. Therefore this cause is reversed and remanded for a new trial.

Because of this conclusion, we do not consider the other contentions raised by the defendant.

Reversed and remanded.

UNVERZAGT and VAN DEUSEN, JJ., concur.