THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RODNEY RIMMER *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 83—2656

Opinion filed March 26, 1985.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Elizabeth Loredo Rivera, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellee Charles Graves.

Patrick R. Hebl, of Chicago, for appellee Rodney Rimmer.

JUSTICE HARTMAN delivered the opinion of the court:

The State appeals from a circuit court order which sustained defendant's motion to suppress certain identification testimony and evidence of their post-arrest statements. (87 Ill. 2d R. 604(a)(1).) The issues raised are whether: (1) the State's appeal was timely filed; (2) an arrest took place in one defendant's apartment; (3) defendants' arrests were valid; and (4) the suppressed evidence was admissible.

On October 18, 1982, Marion Johnson was shot to death in front of a building in the Cabrini-Green housing project. Defendants, who were arrested shortly after the shooting, were identified as the perpetrators by eyewitnesses and subsequently made certain exculpatory and inculpatory statements. They were then charged with murder and armed violence.

Defendants moved separately to quash their arrests and suppress evidence. One hearing pursuant to these motions was conducted on June 13, 1983. Graves testified that at 9:30 p.m. on October 18, 1982, he was watching television in the bedroom of

defendant Rimmer's apartment at 1159 North Larrabee. A police officer entered the bedroom, asked him his name, searched and handcuffed him, and searched the room. Two officers then took him and Rimmer downstairs to their car, telling them they were going to the police station. Graves did not agree to go with them. The officers showed them no search or arrest warrants.

Ivory Rimmer, defendant Rimmer's mother, testified that she was in bed at home at 1159 North Larrabee at about 9:45 p.m. on October 18, 1982, when her son called out that the police wanted to talk to her. Two plainclothes officers, one male and one female, in the apartment hallway, told her that Rodney had been involved in a shooting. The male officer entered Rodney's bedroom and closed the door. Ten minutes later, he came out, preceded by Charles Graves, to whom he later said, "Let's go, buddy." Graves asked what he was wanted for and said he didn't do anything. The officer said, "You'll see," and told the female officer to take Rodney. They all left the apartment. Mrs. Rimmer was not asked, but told, that her son was being taken to the station. Although the officers did not say that defendants were under arrest, Rodney was not permitted to move around the apartment. She was not sure whether Graves was handcuffed, as his hands were behind him.

Rimmer, age 17, testified that while at home at about 9:55 p.m. on October 18, 1982, he opened his door to a knock and police asked if he was Rodney Rimmer and told him to get his mother. When he tried to go to her bedroom, they told him not to "go anywhere," but to "call her," which he did. Officer Davis, whom he knew by name, went into her room, and came out with her. Officer Davis then went into another room and came out with Graves. The officers told defendants they were going to the police station. When Rimmer asked what for, they said, "Just come down." They handcuffed him as they left the apartment, outside his mother's presence.

Officer Joyce Gordon of the Chicago police department testified that on October 18, 1982, she and her partner, Officer Davis, were patrolling the Cabrini-Green area. At 9 p.m., they heard a police broadcast of a "man shot" at 1158 North Cleveland. They arrived at that location and asked people gathered there what had happened. About five to six "kids" came up to their car. One said that Rodney Rimmer had been in the area, "a few minutes" or "a half an hour or so" before the officers arrived. Officer Gordon knew Rimmer. Rimmer was described by the kids as wearing a beige jacket and a black hat and was with another male wearing a brown jacket and

purple pants. The officers began looking for Rimmer and his companion. They then heard a police broadcast which described "two possible suspects wanted for the shooting"—black male teenagers: one wearing a beige jacket and black hat and possibly named "Rodney Reynolds," and the other wearing a brown jacket and purple pants. The officers proceeded to Rimmer's house to talk to him. Mrs. Rimmer answered the apartment door. They explained to her what had happened and her partner asked if he could talk to Rodney. She said, "Okay." Officer Davis went to the back of the apartment and returned with both defendants. Rimmer wore a beige jacket; Graves wore a brown jacket and purple pants. Officer Gordon told Mrs. Rimmer they "just wanted to interview" Rodney at the Cabrini-Green substation. Mrs. Rimmer said, "Okay." They told her she could come along, but she did not do so. When they left the apartment, defendants had not been handcuffed or placed under arrest. As they came out of the building, Officer Thomas Northfeld pulled up and two "kids" in the car said, "Yes, those were the two that did it." Defendants were thereupon placed under arrest, advised of their rights, and taken to the substation. Defendants subsequently made certain oral and written statements.

At the conclusion of the hearing, the court found that defendants were arrested in the apartment, and that probable cause to arrest arose when defendants were identified by witnesses outside the apartment. The court denied defendants' motion to quash and suppress.

At a hearing on August 17, 1983, on Rimmer's motion to reopen the motion to quash his arrest and suppress evidence, the court determined it had earlier misapplied the law; ordered that the identifications and statements be suppressed; and allowed Graves' oral motion to join Rimmer's motion.

On September 15, 1983, a hearing was conducted on the State's motion to reopen the hearing on the motion to quash arrest and suppress evidence. Police Officer Thomas Northfeld testified that on October 18, 1982, he and his partner responded to a call of a "boy shot" at 1158 North Cleveland, where they found a fatally wounded young black male sprawled on the sidewalk. They called for an ambulance and other police. They attempted to find witnesses in the crowd that had gathered. Terrance Davis and Dennis Nelson said they had seen the shooting and described the offenders: two black male youths, one with a black hat and beige jacket, the other with a brown jacket and purple pants. The witnesses said the former offender was named Rodney and his last name "sounded like Rey-

nolds." The officers and witnesses toured the immediate area, searching for the suspects. The witnesses' descriptions of the suspects were broadcast over the police radio.

At the conclusion of the hearing, the court again found that there was no probable cause to arrest defendants in the apartment. Defendants' motion to suppress evidence was accordingly sustained.

At a hearing on October 5, 1983, the court denied the State's petition for admission of defendants' statements based on attenuating circumstances. This appeal followed.

## I

■ We consider first defendants' motion to dismiss the State's appeal on the grounds that it was not timely filed. This motion was taken with the case and is denied in a separate order filed concurrently with this opinion. The circuit court initially sustained defendants' motion to suppress on August 17, 1983; at a hearing on September 15, 1983, pursuant to the State's motion to reopen the suppression hearing, the court again sustained defendants' motion. The State then filed a petition for admission of defendants' statements, heard and denied on October 5, 1983. The State's notice of appeal, filed on November 3, 1983, purported to be from the court's October 5, 1983, order, suppressing the identification evidence and defendants' statements.

The State argues that its petition for admission was "essentially a motion to reconsider"; the time for appeal, therefore, did not commence to run until this petition was denied on October 5, 1983. As the instant petition sought reversal of the prior suppression orders with respect to the identical evidence, albeit on additional or alternative grounds, its characterization by the State as a motion for reconsideration was justifiable. (See *People v. Wagner* (1981), 100 Ill. App. 3d 1051, 1053, 427 N.E.2d 985; *People v. Clark* (1979), 80 Ill. App. 3d 46, 48-49, 399 N.E.2d 261.) The State's notice of appeal was thus timely filed.

## II

■ The State contends that the circuit court erred by finding that defendants were arrested in Rimmer's apartment.

In Illinois, a valid arrest occurs when: police officers inform defendant of a violation; defendant submits to their control; and the evidence clearly shows that the officers *intended* to effect the arrest and defendant so *understood* them. (*People v. Wipfler* (1977), 68 Ill. 2d 158, 165, 368 N.E.2d 870.) Relevant to this analysis is not the

arrestee's subjective understanding, but what a reasonable, innocent man in the arrestee's shoes should have thought under the circumstances. (*People v. Wipfler* (1977), 68 Ill. 2d 158, 166; *People v. Reed* (1982), 104 Ill. App. 3d 331, 336, 432 N.E.2d 979.) A citizen's assumption that he is required to cooperate with police should not be equated with an arrest. (*People v. Wipfler* (1977) 68 Ill. 2d 158, 167.) It is immaterial where police question a citizen; what is relevant is whether his freedom has been restrained. (*People v. Miller* (1980), 89 Ill. App. 3d 973, 977, 412 N.E.2d 175, *cert. denied* (1981), 454 U.S. 871, 70 L. Ed. 2d 175, 102 S. Ct. 339.) Thus, as detention for custodial investigation intrudes so severely on fourth amendment interests, probable cause to arrest is required. *Dunaway v. New York* (1979), 442 U.S. 200, 216, 60 L. Ed. 2d 824, 838, 99 S. Ct. 2248, 2258; *People v. Creach* (1980), 79 Ill. 2d 96, 100, 402 N.E.2d 228, *cert. denied* (1980), 449 U.S. 1010, 66 L. Ed. 2d 467, 101 S. Ct. 564.

The State argues that police officers here merely asked defendants to accompany them to the station for questioning and did not arrest them until after they had been identified as the perpetrators by eyewitnesses. According to defendants, however, they were searched, handcuffed, were not permitted to move about, and were told, not asked, to accompany the officers. Moreover, Rimmer's mother testified that, although she did not see handcuffs, she could not see Graves' hands; she also noted that the officers did not permit her son to move around the apartment. Although Officer Gordon's testimony generally contradicted defendants', she "guess[ed]" that her partner searched defendants and the bedroom before leaving the apartment. The circuit court indicated that, while it did not believe all of defendants' testimony, neither did it believe all of the officer's testimony. It was within the province of the court as trier of fact to evaluate the credibility of witnesses and resolve conflicts in their testimony. (*People v. Berland* (1978), 74 Ill. 2d 286, 305-06, 385 N.E.2d 649.) The court's finding that the arrests took place in the apartment, from the circumstances indicating that defendants were physically restrained therein and compelled to comply with police, therefore was not manifestly erroneous and cannot be disturbed. See *People v. Clay* (1973), 55 Ill. 2d 501, 505, 304 N.E.2d 280; *People v. Winters* (1983), 97 Ill. 2d 151, 158, 454 N.E.2d 299.

### III

■ The State argues further that, if the circuit court was correct in finding that the arrests took place in the apartment, they

were nevertheless proper.

Probable cause to arrest exists when the totality of the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed it. (*People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342 N.E.2d 356; *People v. Lippert* (1982), 89 Ill. 2d 171, 178, 432 N.E.2d 605.) In assessing the existence of probable cause, courts are required to consider "probabilities and are not disposed to be unduly technical." *People v. Clay* (1973), 55 Ill. 2d 501, 504-05, 304 N.E.2d 280.

Our review of the facts compels us to conclude, contrary to the circuit court, that police had probable cause to arrest defendants in Rimmer's apartment. The arresting officers arrived at the homicide scene shortly after the victim had been removed. They learned from some "kids" gathered nearby that Rimmer, identified by name, and a male companion had been in the area at about the time of the shooting. The clothing worn by the two was described by them in detail. As the officers drove around looking for Rimmer, they heard a police broadcast describing two "suspects wanted for the shooting"—two male black teenagers whose clothing exactly matched the kids' description of that worn by Rimmer and his companion. The broadcast further indicated that the "possible name" of one suspect was "Rodney Reynolds." Police officers are entitled to act in reliance upon information received in official police communications. (*People v. Brown* (1980), 88 Ill. App. 3d 514, 519, 410 N.E.2d 505, *cert. denied* (1981), 451 U.S. 1019, 69 L. Ed. 2d 392, 101 S. Ct. 3010; *People v. Harris* (1980), 83 Ill. App. 3d 1123, 1126, 404 N.E.2d 1020.) To predicate an arrest, however, the communication must be based upon facts sufficient to constitute probable cause for arrest. (*People v. Brown* (1980), 88 Ill. App. 3d 514, 410 N.E.2d 505. See *Whiteley v. Warden* (1971), 401 U.S. 560, 28 L. Ed. 2d 306, 91 S. Ct. 1031.) Here, the police broadcast heard by the arresting officers was based upon information obtained by Officer Northfeld from the two eyewitnesses to the shooting. That broadcast, coupled with the information the arresting officers already possessed, provided probable cause for arrest. Further, based upon similarity in the names, the arresting officers could reasonably conclude that one of the "suspects" referred to in the broadcast was Rimmer, whom they knew. When the officers observed that Rimmer and Graves were, in fact, dressed precisely as described by the kids and the subsequent broadcast, there was probable cause to arrest them.

Defendants were arrested without a warrant in Rimmer's

home; nevertheless, the arrests were proper, as both consent to enter and exigent circumstances were present. (See *Payton v. New York* (1980), 445 U.S. 573, 590, 6 L. Ed. 2d 639, 653, 100 S. Ct. 1371, 1382.) To validate a warrantless arrest, consent must be given voluntarily. (*People v. Bean* (1981), 84 Ill. 2d 64, 69, 417 N.E.2d 608, *cert. denied* (1981), 454 U.S. 821, 70 L. Ed. 2d 93, 102 S. Ct. 106. See also *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 222, 36 L. Ed. 2d 854, 859, 93 S. Ct. 2041, 2045.) Such consent may be obtained from a third person who has control over the premises. *United States v. Matlock* (1974), 415 U.S. 164, 169-72, 39 L. Ed. 2d 242, 248-50, 94 S. Ct. 988, 992-93; *People v. Bean* (1981), 84 Ill. 2d 64, 69-70.

Here, Rimmer testified that he opened the door of the apartment after the police knocked. He recognized both officers and knew Officer Davis by name. He called his mother at their request. Officer Davis then entered her bedroom and spoke with her. Officer Gordon, on the other hand, testified that Mrs. Rimmer opened the door and permitted the officers to enter the apartment. Whether defendant's or the police version is believed, there is no indication that either Rimmer or his mother refused entry to the officers or were otherwise uncooperative. The circuit court's determination that the officers had consent to enter was therefore correct.

The arrests were further justified by the presence of exigent circumstances. In determining the existence of exigent circumstances, the following factors are to be considered: the need for prompt police action in view of the recency of the offense; the lack of deliberate or unjustified delay during which a warrant could have been obtained; a reasonable belief that defendant is armed; the presence of a grave offense, especially a crime of violence; a clear showing of probable cause based on reasonably trustworthy information; a clear identification of defendant as the offender; a strong belief that defendant was on the premises entered; and peaceable entry by police. (See *People v. Abney* (1980), 81 Ill. 2d 159, 169-72, 407 N.E.2d 543; *People v. Yates* (1983), 98 Ill. 2d 502, 515, 456 N.E.2d 1369; *People v. Cobb* (1983), 97 Ill. 2d 465, 484, 455 N.E.2d 31.) As these factors should serve as guidelines, "not as cardinal maxims to be rigidly applied in each case," the overriding concern should be the reasonableness of police action under the particular circumstances presented. (*People v. Yates* (1983), 98 Ill. 2d 502, 515-16. See also *People v. Cobb* (1983), 97 Ill. 2d 465, 455 N.E.2d 31.) Thus, these factors need not all be present in every case, and must be satisfied only on balance. *People v. Johnson* (1984), 121 Ill. App. 3d 358, 364,

459 N.E.2d 1000.

Most of the foregoing factors were satisfied in the case *sub judice*. First, the action by the officers was prompt and closely followed the commission of the crime. The arresting officers responded to a report of a "man shot" at 9 p.m. and arrested defendants within an hour of that time. Second, the officers did not delay in going to defendant Rimmer's apartment after hearing the police broadcast describing the suspects. Third, as the crime involved a shooting, the officers could reasonably believe that defendants were armed. Fourth, a grave and violent offense—a homicide by shooting—was involved. Fifth, Officer Gordon knew where Rimmer resided and could not find him on the streets; she therefore could conclude that there was a strong probability that he was in his apartment nearby. Sixth and last, the officers entered the apartment peacefully. Here, the officers acted reasonably under the circumstances and defendants' warrantless arrests were proper.

## IV

■ The State lastly contends that the circuit court erred by suppressing evidence of defendants' street identifications and post-arrest statements. Because we find that defendants' arrests were valid, we must reverse the circuit court's exclusion of the subject evidence on the grounds that it was the "fruit" of defendants' illegal arrests.

For the foregoing reasons, we reverse the order of the circuit court of Cook County granting defendants' motions to quash their arrests and to suppress evidence and remand the case for further proceedings consistent with the views herein expressed.

Reversed and remanded.

STAMOS, P.J., and PERLIN, J., concur.