THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GREGORY GOINS, Defendant-Appellant.

First District (4th Division)   No. 85—3400

Opinion filed September 17, 1987.

JIGANTI, J., dissenting.

Steven Clark and Sue Augustus, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a jury trial, defendant Gregory Goins was convicted of two counts of armed robbery and sentenced to concurrent terms of eight years' imprisonment. He appeals, contending: (1) the police lacked probable cause to arrest him and the trial court erred in denying his motion to quash arrest; (2) his confession was tainted by the illegal arrest; (3) his confession was coerced and involuntary because police arrested his younger brother and put him in a cell next to defendant's and thereby obtained a statement that he would not otherwise have given; and (4) there was only one act of armed robbery and his conviction on the second count should be vacated and the cause remanded for resentencing.

BACKGROUND

On February 16, 1984, an armed robbery occurred at a Saxon paint store in Park Forest, Illinois. Before trial, Goins filed a motion to quash arrest and a motion to suppress statements.

At the hearing on the motion to suppress, Officer Theodore Peck testified that he was one of the officers who went to Goins' home to arrest him. He had reviewed an investigative report prepared by another officer. The report contained a physical description of the suspects and the names "I.C." and "Zeke" Goins as possible suspects, along with a possible address. Peck knew that Goins and his brother Michael fit the descriptions from prior contact with them and he was aware that their friends commonly referred to them as "I.C." and "Zeke." Peck's information was that I.C. or Zeke had been seen in the vicinity of the paint store at the time of the robbery.

Peck and other officers went to the address listed in the report,

which he knew to be Goins', and saw him walking toward a parking lot in the apartment complex. He was arrested, given his *Miranda* warnings, and taken to the Park Forest police station.

According to Peck, at the station Goins denied knowledge of the armed robbery. No further conversation was held at that time and no one threatened or struck Goins. Peck further testified that the person who gave police information on the armed robbery suspects was a citizen of Park Forest with no criminal background.

Officer Maeyama testified that he was on duty the evening of February 17, 1984, when Goins called to him from the lockup. He said he wanted to talk. The officer reminded him that he had invoked his right to remain silent but Goins persisted. He said he understood his rights and waived them. Goins and Maeyama then had a conversation about the robbery of the paint store, after which Peck talked to Goins, also.

Michael Goins, the defendant's brother, testified on behalf of the defense during the motion to suppress. He said that on February 17, 1984, police officers came to his house and asked him to accompany them to the police station. He testified that he was handcuffed even though he was going voluntarily.

At the station, Michael was questioned and then locked in a cell, having been charged with armed robbery of the paint store. When he realized that he was in a cell that adjoined that of his brother, he spoke with Goins. Michael told him what had happened and denied having anything to do with the robbery. Goins then told him not to worry and that he could get him out of the situation.

Goins called Officer Maeyama to the cell and gave him a statement confessing to the crime. He also stated to the police and an assistant State's Attorney that he had not been coerced or threatened and that he made the statement in response to his conversation with his brother.

Michael was released after being put in a lineup.

Goins testified during his motion to suppress that he would not have made the statement if Michael had not been arrested and told he was going to be charged with a crime.

At the close of the evidence the court ruled that the statements were voluntarily made and accordingly denied the motion to suppress them.

Next, the motion to quash the arrest was presented. Further testimony revealed that Officer Peck and four others went to Goins' apartment to arrest him and saw him walking in the parking lot. They did not have a warrant, nor did they observe him doing anything ille-

gal. Their arrest, however, was based upon the information that they had received from an investigative report prepared by another officer who had investigated the incident the previous evening. Peck testified again as to the physical descriptions and other information he had gleaned from the investigative report.

At the close of evidence on the motion to quash, the court ruled that the officers had had probable cause to arrest Goins. The court commented that the physical description coupled with the names known to the officers gave them probable cause to arrest Goins.

The trial took place before a jury on August 5, 1985. Six witnesses testified on behalf of the State; the complaining witnesses, Lorie Vincent and Robert Vasquez; Officers Peck, Maeyama, and Hamilton; and Martin Reggi, the assistant State's Attorney who took Goins' statement. Their testimony can be summarized as follows.

At approximately 8 p.m. on February 16, 1984, Vincent and Vasquez were working at Saxon's paint store. Vincent was working at a cash register when two black men walked in and asked her a question about paint. She and Vasquez were alone in the store. Vasquez talked to the two men, who left shortly thereafter. Next, one of the men returned and put a gun in Vincent's back, telling her that he "wasn't fooling around" and that he wanted all of the money. Vincent gave him the contents of the register. At the direction of the man, Vincent opened the safe and the man started to remove the money. The second man also came over and started stuffing money into his pockets. Vincent testified that approximately $900 was taken in all.

While the two men were taking the money in Vincent's presence, Goins was distracting Vasquez in the back of the store. Vasquez testified that he could not see Vincent and the other two men because his back was to them and he and Goins were in the back of the store.

The two men forced Vincent to accompany them outside of the store. The men ran south. Meanwhile, Vasquez and Goins had come to the front of the store with the items Goins had selected for purchase. Vasquez saw Vincent outside with two black males. He saw that the cash drawers were open and that the safe was open and empty. He reached for the telephone but was afraid of Goins. Goins said he had forgotten his wallet and then left, walking fast in a southerly direction.

During a lineup, Vincent identified a man as the one who had held a gun in her back. She testified that she also recognized in the lineup the man she thought was the customer who was talking to Vasquez, and identified Goins in court as that man. Her identification of Goins was ultimately stricken. However, Vasquez identified Goins in a lineup

and also from a police photograph.

Officer Peck testified as to his arrest of Goins. Officer Maeyama testified as to the conversation he had with Goins at the station when Goins called him over to make a statement. Goins told him that he had distracted a male employee of the paint store while his codefendants held up the cashier.

Officer Hamilton, the officer who did the initial investigation, testified that he had obtained descriptions of the offenders from the victims a few minutes after the crime. Later that evening, he met an individual who gave him the name of "Zeke Goins" as one of the perpetrators. He knew the name to be an alias of Goins'. Hamilton participated in the arrests the following day and recovered a gun, money, and a Saxon paint store bag from the apartment where the arrests were made.

An assistant State's Attorney testified that he took Goins' statement after giving him his *Miranda* warnings. The confession was read into the record.

The State rested and the defense motion for directed verdict was denied.

Michael Goins testified on behalf of his brother. He claimed that he was arrested, put into a cell next to Goins, and after he told his brother that he was wrongly accused of the robbery, Goins called Peck over to the cell to say he wanted to make a statement. Goins was taken away for approximately 20 minutes. Michael and Goins were put in a lineup and Michael was released.

The jury returned a verdict against Goins on two counts of armed robbery, for which he received a term of eight years' imprisonment on each count to run concurrently.

OPINION

We first address the issue of probable cause. Goins contends that the police were acting on a reasonable suspicion in arresting him, rather than upon the requisite probable cause to make the arrest. He asserts that the physical description was too general to suffice and that the informant who implicated Goins did not say he was an eyewitness to the occurrence but only that he had seen Goins in the vicinity of the paint store at the time of the robbery.

In the sometimes problematical analysis of just what constitutes probable cause, the courts have agreed that an officer has such cause to make an arrest if the facts and circumstances within his knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person ar-

rested has committed the offense. (*People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342 N.E.2d 356, 358.) While this standard requires more than mere suspicion, it does not require the arresting officer to have at hand sufficient evidence for a conviction (*People v. Moody* (1983), 94 Ill. 2d 1, 445 N.E.2d 275), and whether probable cause exists depends on the totality of the circumstances known to the arresting officer at the time of the arrest (*People v. Creach* (1980), 79 Ill. 2d 96, 402 N.E.2d 228). Furthermore, in assessing the reasonableness of police conduct it is necessary to consider the officer's duty to maintain order, prevent crime and apprehend criminals, often while acting on a quick appraisal of the information known to him. *People v. Sanchez* (1982), 107 Ill. App. 3d 240, 437 N.E.2d 744.

The officers who arrived at the scene of the robbery obtained physical descriptions of all three offenders. Two were described as black males, 5 feet 9 inches to 5 feet 10 inches in height, average build, and in the range of 17 to 20 years old. The third was described as a black male, 5 feet 8 inches tall and weighing 145 lbs. While we agree that these descriptions are general, they do rule out very short, tall, fat, thin, or, in the case of the first two offenders, very old, black males. More significantly, the arresting officers had received information that one of the men was named Zeke Goins, a man whom Officer Peck knew from prior contacts and who fit one of the descriptions. The informant, who was represented to Peck as a citizen with no police record, placed Goins in the vicinity of the crime at the time of its occurrence.

■ We believe that, based on the totality of these circumstances, the arresting officers had probable cause to make the arrest. In *People v. Rimmer* (1985), 132 Ill. App. 3d 107, 476 N.E.2d 1278, the court upheld a warrantless arrest based on the following. The arresting officer heard a broadcast of an eyewitness description of two suspects in a fatal shooting and the possible name of one of the suspects. In addition, the officer was informed that the defendant and a companion were in the area at the time of the occurrence, dressed as described. Thus, based upon the same type of information as that known by the arresting officers in the instant case, the court in *Rimmer* upheld the arrest. See also *People v. Walker* (1980), 92 Ill. App. 3d 765, 415 N.E.2d 1230 (appellate court reversed trial court's quashing of arrest for lack of probable cause, reasoning that realm of probabilities in probable cause determination involves "factual considerations of everyday life on which reasonable men, not legal technicians, act").

As noted in *People v. Walker*, the probable cause determination is made by a reasonable assessment of the information available to the

officers at the time. More than the physical description, a name is strong support for targeting a particular suspect, especially if the person named is known to the arresting officer, fits the general description, and is placed near the crime site at the time of its occurrence.

The probable cause determination undoubtedly would have been different if the only information given was that Goins was a black male, as was the case in *People v. Nash* (1979), 78 Ill. App. 3d 172, 397 N.E.2d 480. In *Nash*, there was no witness who could describe defendant beyond his gender and race. Certainly, defendant was not identified by name. Moreover, there were two separate crimes in the same location at different times on the same night that may have involved the same perpetrators. However, only a description of the automobiles in question was given to the police and the eyewitness to the shooting for which defendant was charged could not correctly describe the vehicle that was supposedly driven by defendant. Based on the flimsiness of this information, the court concluded that no probable cause to arrest the defendant had been established.

We conclude that the trial court in the pending case correctly denied the motion to quash the arrest of Goins.

■ Because the arrest was legal, the subsequent statement of Goins is not tainted by that arrest. Therefore, we need not consider the argument that if the arrest were illegal, the statement should have been suppressed as being a fruit of that arrest. The trial court did note that even if the arrest had been found invalid, Goins' statement was sufficiently attenuated to preserve the voluntariness of the confession. We believe, however, that the only issue respecting the admissibility of the statement is whether the court properly found it to be voluntarily given under the circumstances.

■ That Goins was given his *Miranda* warnings is undisputed, as is the fact that it was he who initiated the conversation with Officer Maeyama in which he confessed to his role in the crime. Goins does not contend that he was beaten, abused, or otherwise coerced by police misconduct, except for the fact that his brother was arrested and placed in a cell adjoining his. This, he contends, caused him to confess to save his brother and that the police thereby violated his right to remain silent, which he had previously invoked.

We cannot agree with this rather far-fetched attempt to find a *Miranda* violation in the form of some asserted "trick" on the part of the police. Michael was arrested as a suspect in the occurrence and went through a lineup after his brother confessed. Goins intimates that Michael was arrested without probable cause and for the express purpose of getting Goins to incriminate himself. Even if that were

true, and there is no evidence to support it, it was Goins who waived his right to remain silent and asked to make a statement. He was reminded of his previously invoked silence and was given new *Miranda* warnings before he gave his statement. He indicated his understanding of his rights and his desire to waive them. He was under no compulsion to talk and could have waited to see if his brother would be identified in a lineup or otherwise linked to the crime by any evidence. While his desire to clear his brother may be commendable, it is not a sound basis for a finding that his statement was involuntarily given as a result of police misconduct.

The facts of this case differ from those found to be a violation of a defendant's right to remain silent in *People v. Thompson* (1982), 107 Ill. App. 3d 285, 437 N.E.2d 916, upon which Goins relies. There the police actively interfered with the defendant's expressed desire to remain silent. They asked him if he wanted to see his codefendants, who were "squealing" on him. After he was taken to see one of them, he blurted out in anger that he would kill the codefendant for squealing and made other incriminating statements.

Nothing like that occurred in the present case. The cells were divided by a wall and the brothers spoke through an air vent. Goins did not know his brother was there until he heard his voice. No police officer invited Goins to talk to his brother or said that his brother was squealing or anything to that effect. We affirm the trial court's denial of the motion to suppress the statement.

■ The last issue that Goins raises concerns his sentencing. He argues that the evidence only supports the finding of one count of armed robbery, since the only taking occurred in the presence of Vincent alone. Because of this, he contends, this court should vacate the conviction for the armed robbery of Vasquez and remand the cause for resentencing on the remaining count for the armed robbery of Vincent.

The State concedes that the second count of armed robbery should be vacated but maintains that there is no need for resentencing.

In *People v. Mack* (1984), 105 Ill. 2d 103, 473 N.E.2d 880, the Illinois Supreme Court held that there was only one taking of money and that the second count of armed robbery should be vacated. However, the sentence of 25 years for one count of armed robbery was affirmed even though the second, concurrent sentence of 25 years was vacated. The case was not remanded for resentencing.

In the pending case, Goins received two concurrent eight-year sentences, one for each armed robbery conviction. We vacate his con-

viction of the armed robbery of Vasquez and attendant term of imprisonment. We affirm the other conviction and sentence of eight years, finding no persuasive reason to remand for resentencing. The eight-year term is well within the trial court's discretionary powers and Goins does not suggest in what manner the sentence may be inappropriate. Accordingly, it is unnecessary to remand. *People v. Hines* (1982), 105 Ill. App. 3d 35, 433 N.E.2d 1137.

For the foregoing reasons, we affirm the trial court's rulings on the motions to quash arrest and to suppress statements, affirm the judgment and sentence entered upon the jury verdict against Goins on one count of armed robbery, and vacate the second conviction and sentence.

Affirmed in part; vacated in part.

McMORROW, P.J., concurs.

JUSTICE JIGANTI, dissenting:

Although probable cause determinations do not require that the arresting officers have sufficient evidence for a conviction, it is necessary that there be more than a mere suspicion. (*People v. Moody* (1983), 94 Ill. 2d 1, 7, 445 N.E.2d 275.) The facts in this case may have raised a suspicion that the defendant committed the robbery; however, they did not give rise to probable cause. For this reason, I must respectfully dissent.

The only information known to the officers at the time they apprehended the defendant was that two of the suspects were black males approximately 5 feet 9 inches to 5 feet 10 inches tall, with an average build, and between the ages of 17 and 20 years old. The officers also knew that a third suspect was a black male, 5 feet 8 inches tall and approximately 145 pounds. Additionally, the officers received a statement from a citizen informant who stated that he saw the defendant in the vicinity of the store.

As to the physical characteristics known by the officers, the majority attempts to diminish the obvious generality of these characteristics by pointing out that they exclude very old and very fat black males. I do not agree that the exclusion of old and fat black males reduces the large percentage of black males to whom these physical attributes could apply. Regarding the citizen informant's statement to the police that he saw the defendant in the "vicinity" of the Saxon paint store, did vicinity mean outside the store; within the same shopping center; or on a nearby street? The arresting officers did not

speak with the informant and consequently were never able to ascertain what was meant by the "vicinity" of the Saxon paint store. Based upon these facts alone, defendant was arrested without a warrant. It seems obvious to me that these facts had merely cast suspicion on the defendant and did not rise to the level of probable cause.

As for the subsequent confession given by the defendant at the police station, I disagree that there was sufficient attenuation between the illegal arrest and confession so as to remove the taint from the illegal arrest. Courts will examine four factors in determining whether the connection between the illegal arrest and the tainted evidence has become so attenuated as to dissipate the taint. These factors include the temporal proximity of the illegality to the evidence obtained; the presence of the intervening circumstances; the purpose and flagrancy of the policemen's conduct; and the presence or absence of *Miranda* warnings. (*Brown v. Illinois* (1975), 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261-62.) Regarding the temporal proximity, although there is no testimony as to the exact time between the arrest and subsequent confession, it appears as if the defendant made his confession within a few hours after arriving at the police station. More importantly, no intervening event of significance occurred between that time. As for the fact that the defendant was given his *Miranda* warnings, these warnings, by themselves, do not attenuate the taint of an unconstitutional arrest. (*Brown v. Illinois* (1975), 422 U.S. 590, 602, 45 L. Ed. 2d 416, 426, 95 S. Ct. 2254, 2261.) The final factor, the purpose and flagrancy of the police conduct, is not present in this case; however, the protection of the fourth amendment does not turn on a talismanic test. (*People v. Dortch* (1982), 109 Ill. App. 3d 761, 765, 441 N.E.2d 100, citing *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254.) No single factor is dispositive. (*Brown v. Illinois* (1975), 422 U.S. 590, 603, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261.) In the instant case, the record does not contain any evidence to support a finding that the taint from the illegal arrest was dissipated. Consequently, I believe that it was error not to suppress this evidence.