THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEVIN BAILEY, Defendant-Appellant.

First District (3rd Division)    No. 1—90—3405

Opinion filed February 23, 1994.

Rita A. Fry, Public Defender, of Chicago (Denise R. Avant, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and Ann L. Benedek, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Following a jury trial defendant Kevin Bailey was convicted of first degree murder (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a)(1), (a)(2), (a)(3)), armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a)) and two counts of burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—1(a)) and sentenced to an extended term of 80 years' imprisonment for first degree murder and concurrent terms of 30 years for armed robbery and seven years for burglary. Defendant now urges this court to reverse his conviction on grounds that: (1) the trial court erred in denying his motion to quash his arrest and suppress his statements and improperly excluded testimony offered in support of the motion; and (2) the State improperly shifted the burden of proof. Alternatively, defendant asks this court to reduce his sentence for an alleged abuse of discretion at the sentencing hearing.

We affirm the trial court.

Defendant was indicted with codefendant Corey Batchelor on four counts of first degree murder, two counts of burglary and one count of armed robbery for events related to the fatal stabbing of Lula Mae Woods (victim), a 69-year-old woman found dead in the garage behind her home on June 1, 1989.

Prior to trial, defendant filed a motion to quash his arrest and suppress his statements alleging that he was arrested without a valid arrest or search warrant, or without probable cause. At the hearing on the motion, defendant testified that on June 7, 1989, at approxi-

mately 6:30 a.m. he was at home when he received a phone call from the police asking if he would accompany them to the station to answer some questions; defendant agreed. When a plainclothes police officer arrived about 20 minutes later, defendant willingly left his home for the station; defendant was neither handcuffed nor told that he was under arrest or that he would be "locked up" if he did not accompany the officer.

At the station, defendant was placed in a room with a window through which he saw codefendant Batchelor. The police told defendant that Batchelor admitted being with defendant when he found $50 in a puddle on the day of the murder. The police asked defendant if Batchelor was telling the truth or if he knew anything about the murder, and defendant answered the questions willingly and then agreed to take a polygraph examination.

After waiving his *Miranda* rights and completing the polygraph, defendant stated that he was with Batchelor when Batchelor murdered the victim and then described this occurrence. Shortly thereafter, defendant changed his story to confess that he actually stabbed the victim, detailing how Batchelor had given him the knife and that he agreed to rob but did not intend to kill the victim. Defendant was then placed under arrest and handcuffed, at which point he no longer felt free to leave the station.

In response to defendant's motion, the State presented violent crimes Detectives Lawrence Nitsche and Daniel McWeeny, who essentially testified that defendant was not placed under arrest until after he admitted stabbing the victim.

The court denied defendant's motion and determined that: (1) defendant was not in custody at the time he was taken from his home to the police station; (2) probable cause for defendant's arrest issued from defendant's admissions after receiving *Miranda* warnings; and (3) defendant's arrest occurred after such admissions.

The case proceeded to trial, at which time the State presented the testimony which follows. On June 1, 1989, the victim was 69 years old and residing with her husband of 23 years when she was found on the floor of her garage in a pool of blood. After the police arrived on the scene, an officer found two sets of keys and a purse strap near the body, and a "Domino's Pizza" baseball cap underneath the body which did not belong to either of the Woodses. From the alley a block away from the victim's garage, the police later recovered the victim's purse, bank passbook and deposit slips recording that day's deposit total of $354, and a knife later identified as the murder weapon.

After the police spoke with Batchelor regarding the victim's mur-

der, they attempted to locate defendant, who was not yet a suspect. The State then offered testimony consistent with the testimony presented at the hearing on defendant's motion to quash his arrest and suppress his statements except to add that defendant told Detective McWeeny after arriving at the police station that he was with Batchelor on June 1, 1989, and that as they were walking towards the murder scene Batchelor picked up $50 from a puddle.

The State also presented testimony supplementing the details of defendant's confession at the police station. Specifically, defendant told Detective McWeeny that as he and Batchelor were walking across the alley, they spotted the victim in the garage and Batchelor expressed his desire to take her purse. After Batchelor handed defendant the knife, they entered the garage and demanded the victim's purse. When she refused to comply a struggle ensued, at which point defendant was only successful in severing one of the purse straps. When the victim continued to struggle to keep her property, defendant "just kind of poked at her three or four times" with the knife until she relinquished control of her purse. Defendant and Batchelor then proceeded to the alley where they discarded the knife and the purse after removing the money found in the bank passbook.

The State then presented the assistant State's Attorney who interviewed defendant at the police station, who testified that after defendant admitted murdering the victim, defendant elected to provide a court-reported statement of the events surrounding this occurrence which, upon completion, defendant read aloud, corrected, and then signed. As corrected, the statement provides that Batchelor suggested robbing the victim and gave defendant the knife, but that defendant struggled with and eventually stabbed the victim to gain possession of her purse. Defendant further stated that Batchelor was wearing a Domino's Pizza cap before but not after the robbery. The State rested its case in chief after publishing defendant's statements to the jury.

Defendant introduced the following stipulations into evidence: (1) the fingerprints which the police secured from a business card and an envelope in the victim's purse did not match the prints of either defendant or Batchelor; (2) no useable fingerprints were secured from the purse, bank passbook, deposit slips, purse strap or the knife; and (3) one eyebrow hair was found in the baseball cap which was not consistent with samples taken from defendant or Batchelor.

Following closing arguments, the jury found defendant guilty of first degree murder, burglary and armed robbery, making him eligible for the death penalty or life imprisonment without the possibility of parole (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(b)(6)(a), (b)(6)(b), (b)(6)(c);

Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1)(b)), or an extended-term sentence because of the victim's age. After hearing arguments in mitigation and aggravation, the court sentenced defendant to an extended term of 80 years' imprisonment for the murder and concurrent terms of 30 years for armed robbery and seven years for burglary.

Defendant first argues that the trial court improperly denied his motion to quash his arrest and suppress his statements since he was in custody without probable cause from the time he left his home for the police station. This argument is misplaced under the reasoning expressed by this court in *People v. McClellan* (1992), 232 Ill. App. 3d 990, 600 N.E.2d 407, where we upheld the trial court's denial of the defendant's motion to quash which alleged that the arrest at his grandmother's home was illegal, on grounds that the arrest occurred after defendant failed a polygraph examination rather than when he accompanied the police to the station.

In *McClellan*, we stated that an arrest occurs when the circumstances are such that a reasonable person, innocent of any crime, would conclude that he was not free to leave. (*McClellan*, 232 Ill. App. 3d at 999, quoting *In re D.G.* (1991), 144 Ill. 2d 404, 409, 581 N.E.2d 648.) Courts look to the totality of the circumstances surrounding the encounter to determine if and when an arrest has occurred. (*McClellan*, 232 Ill. App. 3d at 999, citing *People v. Graham* (1991), 214 Ill. App. 3d 798, 809, 573 N.E.2d 1346.) " 'In Illinois, a valid arrest occurs when: police officers inform defendant of a violation; defendant submits to their control; and the evidence clearly shows that the officers *intended* to effect the arrest and defendant so *understood* them.' " (Emphasis in original.) (*McClellan*, 232 Ill. App. 3d at 999, quoting *People v. Rimmer* (1985), 132 Ill. App. 3d 107, 111, 476 N.E.2d 1278.) Factors to be considered in determining whether or not an arrest occurred include the presence or absence of a formal declaration of arrest and other routine procedures associated with an arrest, such as handcuffing, fingerprinting and photographing. *McClellan*, 232 Ill. App. 3d at 999, citing *People v. Clay* (1984), 124 Ill. App. 3d 140, 148, 463 N.E.2d 929.

In *McClellan*, as in the present controversy, the trial court determined that the arrest occurred at the police station because defendant: (1) consented to the police entering the residence; (2) agreed to accompany the police to the station for an interview; (3) admitted he went "willingly" with the officers; (4) was not handcuffed or otherwise restrained; and (5) was given *Miranda* warnings and informed that he was being placed under arrest only after he failed the polygraph examination. This court will not disturb a trial court's

finding as to the time of an arrest absent manifest error. (*McClellan*, 232 Ill. App. 3d at 999, citing *Rimmer*, 132 Ill. App. 3d 107.) Here, the propriety of the trial court's decision is strengthened by defendant's admission at the police station that he was placed under arrest after confessing to the murder.

■ In support of his position that the arrest was effected at the time he left his home, defendant incorrectly relies on *People v. Vega* (1990), 203 Ill. App. 3d 33, 560 N.E.2d 983, which this court has previously distinguished. (See *McClellan*, 232 Ill. App. 3d at 999-1000; see also *People v. Vega* (1993), 250 Ill. App. 3d 106, 620 N.E.2d 1189.) " 'A citizen's assumption that he is required to cooperate with police should not be equated with an arrest.' " (*McClellan*, 232 Ill. App. 3d at 1000, quoting *Rimmer*, 132 Ill. App. 3d at 112; see *People v. Hunley* (1989), 189 Ill. App. 3d 24, 36, 545 N.E.2d 188.) The record in the present controversy shows that defendant had ample opportunity to reject accompanying the police to the station since the police telephoned defendant to request his audience before arriving at his home; defendant responded that it would be "no problem" for him to accompany the officers to the station; and defendant was transported to the station without being handcuffed, shown a weapon or advised that he was under arrest. (*Cf. People v. Holveck* (1990), 141 Ill. 2d 84, 565 N.E.2d 919.) Because the record shows that a reasonable person would *not* have considered himself under arrest when defendant left his home for the police station and thereafter cooperated with the police, we affirm the trial court's denial of defendant's motion.

■ Defendant further asserts that he was denied a fair hearing on his motion to quash his arrest and suppress his statements when the trial court excluded his testimony regarding his state of mind when asked to accompany the police to the station. However, defendant has waived this issue on appeal since he failed to object at trial or raise it in a post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186-87, 522 N.E.2d 1124.) Notwithstanding waiver, however, these statements appear extraneous to the motion since we look to what a reasonable, innocent person should have thought under the circumstances rather than the subjective understanding of the arrestee. *McClellan*, 232 Ill. App. 3d at 999, citing *Clay*, 124 Ill. App. 3d at 148.

Defendant further argues that the State improperly shifted the burden of proof at closing by making arguments not based on evidence and appealing to the jury's "passions and prejudices." Our examination of the record reveals no objection interposed to the several statements contested by defendant in his appellate brief, nor were the statements otherwise properly preserved; hence, these issues are

waived. (See *People v. Maldonado* (1992), 240 Ill. App. 3d 470, 482, 608 N.E.2d 499.) Accordingly, we address only the State's comment concerning defendant's court-reported confession; specifically, "Kevin Bailey with [his confession] convicts himself of this murder, no question about it."

■ Contrary to defendant's contention, the comment represents a reasonable reply to defense counsel's argument that defendant fabricated his confession in response to police coercion or that the detectives investigating the murder may not have been telling the truth about the arrest. "[A] defendant cannot ordinarily claim error where the prosecutor's remarks are in reply to and may be said to have been invited by defense counsel's argument." (*People v. Dixon* (1982), 91 Ill. 2d 346, 350-51, 438 N.E.2d 180.) Moreover, the trial court cured any error by sustaining defense counsel's objection and instructing the jury to disregard the statement at issue. *People v. Herrett* (1990), 137 Ill. 2d 195, 214-15, 561 N.E.2d 1.

Finally, defendant maintains that the imposition of an 80-year extended-term sentence for murder is excessive where he had no criminal history and possessed a "favorable" background. Defendant also argues that he is entitled to a new sentencing hearing since the trial court failed to properly balance his rehabilitative potential with society's need for retribution.

The imposition of a sentence rests within the sound discretion of the trial court and will not be altered upon review absent an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882.) A reasoned judgment as to a proper sentence depends upon such factors as the gravity of the offense and the circumstances of its commission as well as the defendant's credibility, demeanor, general moral character, social environment, habits, age and criminal history. (See *Perruquet*, 68 Ill. 2d at 154.) However, neither a defendant's rehabilitative potential (*People v. McDonald* (1992), 227 Ill. App. 3d 92, 100, 590 N.E.2d 1003; *People v. BoClair* (1992), 225 Ill. App. 3d 331, 335-36, 587 N.E.2d 1221) nor his lack of criminal background (*People v. Moore* (1992), 229 Ill. App. 3d 66, 78-79, 593 N.E.2d 771) is as persuasive a consideration as the gravity of the offense. (See *People v. Hernandez* (1990), 204 Ill. App. 3d 732, 740, 562 N.E.2d 219.) A reviewing court will not substitute its judgment for that of the sentencing court merely because it would weigh factors differently. *Perruquet*, 68 Ill. 2d at 156.

■ The record shows that the trial court properly considered evidence mitigating defendant's sentence including his age, lack of criminal history and freedom from alcohol or drug problems. The court also heard testimony from witnesses who considered defendant a

"helpful" person in that he assisted with both household and gardening chores. Based on this evidence, the court stated that "the mitigating factors outweigh the aggravating factors insofar as the imposition of the death penalty." The court similarly rejected a life sentence "as not necessary to serve the ends of justice in this case." The court thus determined the appropriateness of an extended-term sentence due to the victim's age. *Cf. People v. Neither* (1992), 230 Ill. App. 3d 546, 595 N.E.2d 124 (maximum extended-term sentences reduced where defendants were young men without substantial criminal records who did not carry weapons during the assaults).

The court further acknowledged its obligation to balance all mitigating factors with society's need for retribution "so that justice is done, and justice is done when the punishment is appropriate to the crime committed."

In light of the trial court's rejection of the death penalty and a life sentence based on its consideration of mitigating factors, the record supports a finding that the sentence imposed, in fact, achieved justice.

For the foregoing reasons, we affirm the defendant's conviction and sentence.

Affirmed.

TULLY, P.J., and CERDA, J., concur.