(No. 51888.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. JOHN CREACH *et al.,* Appellees.

*Opinion filed Feb. 22, 1980.—Rehearing denied March 28, 1980.*

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald B. Mackay and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and Marcia B. Orr, Joan S. Cherry and Richard Heytow, Assistant State's Attorneys, of counsel), for the People.

Edward M. Genson, of Chicago (Jeffrey B. Steinbeck, of counsel), for appellee John Creach.

Patrick G. Reardon, of Chicago (Edward Burke Arnolds, of counsel), for appellee Thomas Ruppert.

MR. JUSTICE MORAN delivered the opinion of the court:

The body of Dolores Irion was found at approximately

7 a.m. on September 25, 1973, lying near the CTA tracks in Evanston. She had died there as a result of receiving multiple stab and gunshot wounds. In connection therewith, defendants, John Creach and Thomas Ruppert, were charged with murder and armed robbery. The circuit court of Cook County adjudged Creach guilty of murder and armed robbery, and Ruppert guilty of armed robbery. The appellate court, in a split decision, reversed the convictions and remanded for a new trial. (69 Ill. App. 3d 874.) We granted the State leave to appeal.

The only contentions made by the State are (1) the defendants were not arrested at their initial confrontation with the police; (2) even if defendants were arrested at such time, probable cause existed for their arrest; and (3) the appellate court erred in holding that the trial court should have instructed the jury on the affirmative defense of compulsion as to defendant Ruppert. Because of our holding herein, it is unnecessary that we resolve the last stated issue.

Defendants filed a pretrial motion to suppress certain statements and other evidence. At the hearing on the motion to suppress, Evanston police officers Glanz and Birkenheier testified as to facts and circumstances known to them prior to confronting the defendants. According to the officers, Detective Mitchem of the Evanston Police Department told them that he had spoken to Creach's mother, Dolly Moore, during the day on which Dolores Irion's body was discovered. Mrs. Moore, who lived next door to the victim in Chicago, told Detective Mitchem that she had had a telephone conversation earlier that day with her son, who was in Ohio.

The officers also testified that shortly after 8 a.m. on the following day, September 26, 1973, they went to the home of Mrs. Moore. She repeated the telephone conversation she had with her son the previous day. In addition, she stated to the officers that she informed her son, during the same telephone conversation, that Dolores

Irion had been murdered; that Creach responded that he was in Ohio with a friend, Tom; and that he had last seen Dolores Irion at 1:30 a.m. on September 25, 1973, when he left for Ohio in her 1966 Cadillac. During this telephone conversation Mrs. Moore asked her son to come home immediately; Creach responded that he would. Mrs. Moore described Tom to the officers as a short youth with fair hair. Mrs. Moore also informed the officers that Creach had been living with Irion periodically during the last four weeks, had been driving Irion's car, and had been taking her to and from work.

The officers also related that the Evanston police had independently confirmed that the victim's car was missing, that it had rained heavily until about midnight on the evening of September 24, 1973, but that, when the victim's body was discovered, the clothing was dry, indicating that the victim had not been killed until after midnight. The police knew of no one other than Creach who had seen the victim alive after that time.

Further, while at the home of Mrs. Moore, Officer Glanz was shown a photograph of Creach. The officers told Mrs. Moore that they were going to take the defendants, upon their return from Ohio, to the Evanston police station for questioning. The officers then returned to their squad car to maintain a surveillance over Mrs. Moore's home. At approximately 9:30 a.m., they observed the defendants approach Mrs. Moore's home on foot. Officer Glanz admitted that, at this point in time, the officers took the defendants into custody from which they were not free to leave, that they "patted [the defendants'] clothing down," and then transported the defendants to the Evanston police station.

The trial court found that the defendants were arrested at the time of their initial contact with the police in front of Mrs. Moore's residence, and that there was probable cause for the arrest of both defendants. It therefore denied the motion to suppress. The appellate court agreed

that the defendants were arrested at their initial encounter with the police, but held that probable cause for the arrests was lacking.

The State contends that the defendants were not arrested until after they were transported to the Evanston police station. In support of its position, the State relies principally upon this court's decision in *People v. Wipfler* (1977), 68 Ill. 2d 158. We, however, find that case to be factually distinguishable from and inapplicable to the case before us. Rather, we hold the instant case to be controlled by the recent United States Supreme Court decision in *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248. *Dunaway* held that detention for custodial interrogation, regardless of whether it is technically labeled an arrest, intrudes so severely on interests protected by the fourth amendment as to require the existence of probable cause to arrest. The circumstances to which the court applied the traditional probable cause standard were as follows. The defendant was taken from a neighbor's home to a police car, transported to a police station, and placed in an interrogation room. He would not have been free to leave the custody of the officers. The court expressly declined to apply to this situation the balancing test which it had adopted in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, for judging the propriety of certain fourth amendment "seizures" substantially less intrusive than arrests.

The circumstances in the case at bar are indistinguishable in all pertinent aspects from those in *Dunaway*. During the hearing on the motion to suppress, Officer Glanz testified that, at their initial encounter with the defendants, he and Officer Birkenheier took the defendants into custody from which they would not have been free to leave, and that the defendants' clothing was patted down. Although Birkenheier was not, at that hearing,

questioned about the officers' initial contact with the defendants, he testified at trial that "We approached the two subjects, identified ourselves, and conducted a frisk." He stated further that defendants were advised that "They would have to come with us to the Evanston police station."

The State points out that the defendants returned from Ohio voluntarily. In this connection, the *Dunaway* court noted that the lower court had found that the case did not involve a situation wherein the defendant voluntarily appeared at the police station in response to a police request. Regardless of the voluntariness of the defendants' return from Ohio, it is clear from the evidence that their transport to the police station was involuntary. (442 U.S. 200, 206, 207 n.6, 60 L. Ed. 2d 824, 831, 832 n.6, 99 S. Ct. 2248, 2252, 2253 n.6.) Finally, it is of no import that this detention of the defendants may have occurred during an investigative, rather than an accusatory stage. (442 U.S. 200, 214, 60 L. Ed. 2d 824, 837, 99 S. Ct. 2248, 2257.) For these reasons we find no merit to the State's first contention.

The State next argues that, even if, for fourth amendment purposes, defendants were arrested at the time of their initial encounter with the police, probable cause existed for their arrest. Probable cause to arrest exists "when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense." (*People v. Robinson* (1976), 62 Ill. 2d 273, 276. See also *People v. Wright* (1974), 56 Ill. 2d 523, 528-29, quoting from *Brinegar v. United States* (1949), 338 U.S. 160, 175-76, 93 L. Ed. 1879, 1890, 69 S. Ct. 1302, 1310-11; *Dunaway v. New York* (1979), 442 U.S. 200, 208 n.9, 60 L. Ed. 2d 824, 833 n.9, 99 S. Ct. 2248, 2254 n.9.) This court has stated:

"Whether or not probable cause for an arrest exists in a particular case depends upon the totality of the facts and circumstances known to the officers when the arrest was made. [Citations.] In deciding the question of probable cause in a particular case the courts deal with probabilities and are not disposed to be unduly technical. These probabilities are the factual and practical considerations of everyday life on which reasonable men, not legal technicians, act." *People v. Clay* (1973), 55 Ill. 2d 501, 504-05.

We hold that there was sufficient evidence introduced at the hearing on the motion to suppress for the trial court to rule that, at the time that Officers Glanz and Birkenheier took defendant Creach into custody, probable cause existed for his arrest. The officers knew that Creach had been living with the victim, that she most likely had been killed sometime after midnight on September 25, 1973, that Creach had last seen her at 1:30 a.m. on that date, just 5½ hours prior to the time the body was discovered, and that he had unexplainedly left for Ohio in the victim's car. We conclude that, having these facts in mind, Officers Glanz and Birkenheier were reasonably justified in believing that Creach was responsible for the victim's death.

The only evidence available as to Ruppert, however, was that he was a short youth with fair hair, was a friend of Creach, and was with Creach in Ohio. This evidence was manifestly insufficient to establish probable cause for the arrest of Ruppert. We note that, with respect to searches, "probable cause particularized with respect to [the] person *** cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be." (*Ybarra v. Illinois* (1979), 444 U.S. 85, 91, 62 L. Ed. 2d 238, 245, 100 S. Ct. 338, 342.) Similarly, probable cause to

arrest a particular individual does not arise merely from the existence of probable cause to arrest another person in the company of that individual.

As to defendant Creach, we reverse the portion of the appellate court judgment which reversed his conviction, and affirm the judgment of the circuit court. As to defendant Ruppert, the appellate court judgment, reversing his conviction and remanding for retrial, is affirmed.

*Appellate court affirmed in part*
*and reversed in part; circuit*
*court affirmed in part.*