THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MACK SIMMONS, Defendant-Appellant.

Second District    No. 2—96—0386

Opinion filed January 5, 1998.

G. Joseph Weller and Colleen M. Chang, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Robert J. Morrow, of Elgin, for the People.

JUSTICE McLAREN delivered the opinion of the court:

A jury found the defendant, Mack Simmons, guilty of unlawful use of a weapon by a felon (720 ILCS 5/24—1.1 (West 1994)) and possession of a firearm without a firearm owner's identification card (430 ILCS 65/2(a)(1) (West 1994)). The trial court sentenced the defendant to seven years' imprisonment for the unlawful use of a weapon by a felon charge and 364 days' imprisonment for the possession of a firearm without a firearm owner's identification card charge. We reverse and remand.

The facts are taken from the record. At trial, Sergeant Stephen

Johnson of the Rockford police department testified that on October 22, 1994, at approximately 5 a.m., he was watching an apartment building through binoculars from an unmarked car in response to reports of drug trafficking. A four-door car with the engine running was parked in front of the apartment building. Two people were sitting in the car. A black man ran out of the apartment building, entered the vehicle, and sat in the passenger side of the backseat. Seconds later the car drove off. Sergeant Johnson noticed the poor condition of the car, followed the car for three blocks, and then pulled the car over. After radioing that he was making a traffic stop, Sergeant Johnson approached the driver of the car, asked the driver for his driver's license, and asked the two passengers their names. The front-seat passenger stated that his name was Dennis Johnson and the defendant, who was seated in the backseat, provided his name. Sergeant Johnson returned to his vehicle to check the validity of the driver's license and to check if there were any warrants for any of the men in the car. The driver's license was not valid, and there was a warrant for the defendant for missing a court date.

About two minutes later, Officers Fricke and Shimaitis arrived and arrested the driver. Sergeant Johnson opened the passenger door and asked the defendant to step out; the defendant complied. Sergeant Johnson told the defendant there was a warrant for his arrest, and he handcuffed and searched the defendant. Sergeant Johnson found no weapons or drugs on the defendant.

As Sergeant Johnson moved the defendant from between the door and the car, Sergeant Johnson looked at the backseat where the defendant had been sitting and saw a handgun. An inch or two of the barrel of the gun was tucked under a small cooler which was in the middle of the backseat. Although Sergeant Johnson did not see the defendant sitting on the gun, he stated that the gun's handle was in the same place as the defendant's left leg and hip. He believed the defendant had been sitting on the gun. Sergeant Johnson saw nothing but the gun and a cooler in the backseat. Sergeant Johnson did not ask the defendant to whom the gun belonged and the defendant said nothing about the gun. The defendant did not have a valid firearm owner's identification card and had been convicted of a prior felony. A check on the gun indicated that it had not been reported stolen. Sergeant Johnson did not attempt to obtain fingerprints from the gun.

Sergeant Johnson told the other two officers there was a "1032," meaning a gun. He turned the defendant over to Officer Shimaitis. Sergeant Johnson put the gun in his pocket, had the other passenger, Dennis Johnson, step out of the car, and frisked him. According to

Sergeant Johnson, Dennis Johnson could have picked up the gun from where he was sitting in the car. Sergeant Johnson asked Dennis Johnson to whom the gun belonged and then let him go. At trial, Dennis Johnson refused to testify, invoking his fifth amendment right against self-incrimination.

Officer Shimaitis' testimony essentially corroborated Sergeant Johnson's. Shimaitis stated that, after taking custody of the defendant, he saw a steel blue revolver on the backseat of the car next to where the defendant's leg would have been. He also saw a cooler in the middle of the backseat. Shimaitis could not recall whether any portion of the gun was under the cooler, which was located in the middle of the backseat. Shimaitis saw miscellaneous items on the floor in the back of the car.

The defendant testified on his own behalf. He stated that in the early morning hours of October 22, 1994, he went to his mother's apartment to get some money to bail his sister out of jail in Milwaukee. The defendant was at the apartment building to look for his brother. When he came out of the building, he saw Dennis Johnson in a car. The defendant did not know the driver. Dennis Johnson called the defendant to the car, and the two talked for a minute or so before the defendant got into the car.

According to the defendant, the backseat of the car had a "lot of stuff" on it, including a cardboard box and a cooler. The defendant pushed the stuff over and sat next to the cooler, which was on his left; the window was on his right. In addition, there were cloths, greasy rags, a car jack, wrenches, and other "junk" on the floor of the back of the car. The defendant stated that the driver agreed to give him a ride to Milwaukee, so the defendant gave the driver $20 for gas. There was a discussion in the car about drugs and guns.

The defendant testified that he was in the car for about 30 seconds before the car was pulled over by Sergeant Johnson. The defendant corroborated Sergeant Johnson's testimony in that Sergeant Johnson asked the driver for his driver's license, asked the defendant and Dennis Johnson for identification, told the defendant that a bench warrant had been issued because the defendant missed a court date, and handcuffed the defendant. The defendant was then placed in a squad car. Dennis Johnson was permitted to leave.

The defendant testified that he had not carried a gun that day and had not put a gun in the car. He stated that he did not see the gun, sit near or on the gun, or know anything about the gun. The first time he knew about the gun was when Sergeant Johnson told the defendant he was being charged with a gun violation while they were in the Public Safety Building. The defendant admitted that he

had been previously convicted of aiding and abetting a robbery and that he did not have a firearm owner's identification card. He explained that he was not eligible to receive one.

On rebuttal, Sergeant Johnson stated that after searching the car he saw no cardboard box, tire jacks, wrenches, or dirty rags in the backseat of the car. However, he admitted that his focus was on the weapon.

During deliberations, the jury asked for the defendant's testimony regarding the discussion about guns and drugs. The jury also requested the defendant's testimony regarding his awareness of the gun at the Public Safety Building. Without objection, the jury was told to decide the case on the testimony it heard before.

The jury found the defendant guilty of both charges, namely, unlawful use of a weapon by a felon and possession of a firearm without a firearm owner's identification card. At the sentencing hearing, held in October 1995, the defendant filed an affidavit of Dennis Johnson. In the affidavit, Dennis Johnson stated as follows:

"On or about October 22, 1995, I was in an automobile with the driver, Timothy Elmer, who I did not know, when [the defendant] got into the vehicle. Before [the defendant] got into the vehicle, the driver asked me if I would buy some drugs for him and that he had a gun to sell for that purchase.

I did not see a gun before [the defendant] got into the vehicle nor did I see [the defendant] with a gun. Within minutes after [the defendant] got into the vehicle, and we drove off, we were stopped by the police."

The defendant also offered the testimony of Lawrence Mathis as mitigation. Mathis stated that he knew the defendant on October 22, 1994, that Mathis' fiancee lived next door to the apartment building in question, and that earlier that day Mathis saw Dennis Johnson with another man trying to sell a pistol. According to Mathis, Dennis Johnson and the other man then got into a car which was parked in front of the apartment building. Mathis also stated that the defendant told Mathis that the defendant was going to Milwaukee to help a relative. Mathis stated that he did not come forward earlier because he had a criminal record.

The trial court sentenced the defendant to seven years' imprisonment for the unlawful use of a weapon by a felon charge and 364 days' imprisonment for the possession of a firearm without a firearm owner's identification card charge. The trial court denied the defendant's motion for a new trial based on new evidence and trial errors. This appeal followed.

The defendant first argues that he was denied a fair trial because

the prosecutor improperly highlighted the defendant's postarrest silence during the State's case in chief and closing argument. The State argues that defense counsel opened the door to this type of questioning, failed to object to the prosecutor's remark during closing arguments, and that, even if the prosecutor's references to the defendant's postarrest silence were improper, they did not prejudice the defendant. We agree with the defendant.

■ Generally, questions and remarks by a prosecutor regarding a defendant's postarrest silence are improper. *People v. Patterson*, 282 Ill. App. 3d 219, 234 (1996). Thus, a defendant's postarrest silence cannot be used to impeach his trial testimony or to otherwise create an inference of guilt. *Doyle v. Ohio*, 426 U.S. 610, 619, 49 L. Ed. 2d 91, 98, 96 S. Ct. 2240, 2245 (1976); *People v. Mischke*, 278 Ill. App. 3d 252, 265 (1995). There are two exceptions to this rule. A defendant's postarrest silence may be used for impeachment purposes when the defendant testifies at trial that he gave an exculpatory statement to the police when arrested or if the defendant made a prior inconsistent statement to the police after his arrest. *People v. Little*, 223 Ill. App. 3d 264, 274 (1991). Although the defendant's postarrest silence may be used in limited situations for impeachment purposes, it is "not admissible for any purpose in the State's case in chief." *People v. Strong*, 215 Ill. App. 3d 484, 488 (1991).

■ In the case at bar, during cross-examination, the following exchange took place between defense counsel and Sergeant Johnson:

"Q. Did you ask my client whose gun that was?

A. I was going to.

Q. But you didn't?

A. I tried to.

Q. But you didn't?

A. No, sir, I did not."

On redirect, the prosecutor questioned Sergeant Johnson as follows:

"Q. And when you were asked on cross-examination if you ever asked the defendant if that gun was not his, did he ever volunteer to you that the gun was not his? Did he ever say, 'That's not my gun'?

A. No, sir.

Q. What did he say after you pulled him out and you saw that weapon? What did he say about that gun?

A. He never acknowledged the gun, never said anything about it.

Q. Did he say, 'That's not my gun'?"

At this point defense counsel objected, and the following colloquy occurred between the prosecutor, defense counsel, and the court:

"[Defense]: Objection, Judge; he doesn't have to say anything.

[Prosecutor]: Judge, he opened the door.

[Defense]: I didn't open any door. I asked him the question. He said, 'I didn't say anything.'

THE COURT: Okay. I'll sustain the objection to the leading nature of the question."

At this point the prosecutor asked Sergeant Johnson whether the defendant ever said anything about the gun. Sergeant Johnson replied, "No, sir." The prosecutor then asked Sergeant Johnson the following question: "Then at that point did the defendant ever say anything about that gun not being his, saying, 'Hey, that's not my gun'?" Defense counsel objected again, claiming that the question was improper. Then the following exchange took place:

"[Prosecutor]: Judge, he specifically asked this officer, 'Did you ask the defendant if that was his gun'? He opened the door.

[Defense]: If I asked that question, a simple question asked and answered, yes or no, he said he did not. So why do we go any further?"

The court then sustained defense counsel's objection. Then during closing arguments, the State made the following statements:

"Do you think for a second when the officer is pulling him out he's going to go, 'Excuse me, Officer, I have a loaded .38 handgun; oh, by the way, I'm a convicted felon'? [*sic*]."

Defense counsel did not object to either remark.

In the case at bar, the prosecutor improperly questioned Sergeant Johnson regarding the defendant's postarrest silence. The questions did not fall within either exception to the rule against using a defendant's postarrest silence against him. The State was not attempting to elicit impeachment. The defendant did not testify that he told the police that he did not know anything about the gun and did not know it was in the car. Further, the defendant's exculpatory testimony was not inconsistent with anything the defendant said to the police. Thus, the prosecutor's questions were improper.

■ The State's argument that defense counsel "opened the door" is without merit. Defense counsel limited his question to what Sergeant Johnson asked the defendant. Defense counsel asked Sergeant Johnson whether he asked the defendant if the defendant knew who owned the gun. Sergeant Johnson replied "no." Defense counsel limited his question to what Sergeant Johnson asked the defendant. Defense counsel did not ask Sergeant Johnson anything about the defendant's comments or lack thereof. Therefore, defense counsel did not invite the prosecutor's questions regarding the defendant's postarrest silence.

■ Although the trial judge sustained defense counsel's objections

to the improper questions, we believe that the improper questions were later compounded by the prosecutor's comments during closing argument regarding the defendant's postarrest silence. We recognize that defense counsel did not object to the prosecutor's allegedly improper comments during closing argument. However, we believe this case was closely balanced in that it rested with whether the jury believed that the defendant did not know that the gun was in the car. Thus, we address this issue under the plain error rule. *People v. Mitchell*, 155 Ill. 2d 344, 354 (1993). Although the prosecution is given wide latitude in closing arguments (*People v. Alvine*, 173 Ill. 2d 273, 292 (1996)), this latitude in not so wide as to encompass this prosecutor's improper comments regarding a defendant's postarrest silence. *Patterson*, 282 Ill. App. 3d at 234. Thus, the defendant was denied a fair trial.

■ We also note that the prosecutor's improper comments regarding the defendant's postarrest silence were further compounded by the prosecutor's comments which implied that the defendant was guilty simply due to his status as a defendant. During closing argument the prosecutor stated:

"When [the defendant] sits on [the gun], he's going to feel this, because he's a bony individual. But what did he say? 'No, I didn't feel.' Why? Because he's lying. He's not telling the truth, because if he tells us the truth, it leads to a conviction."

Thus, the prosecutor argued that the defendant was guilty because he remained silent and that the defendant was guilty because he chose to speak. This deprived the defendant of any defense.

■ Because we are remanding this case for a new trial, we must consider whether the evidence was sufficient to prove the defendant guilty beyond a reasonable doubt. *People v. Porter*, 168 Ill. 2d 201, 215 (1995). After reviewing the record, we determine that the evidence was sufficient to support the guilty verdicts. Thus, a new trial is proper. *Porter*, 168 Ill. 2d at 215.

Further, because of our decision regarding the prosecutor's improper questions and comments, we need not address the remaining issues raised by the defendant. However, we note that on remand the parties may want to discuss our supreme court's recent decision in *People v. Davis*, 177 Ill. 2d 495 (1997), in which the court held that the statutory penalty for felons convicted of failing to register pursuant to the Firearm Owners Identification Card Act (730 ILCS 5/5—5—3(c)(2)(N) (West Supp. 1995)) violates the Illinois Constitution.

The judgment of the circuit court of Winnebago County is reversed, and the cause is remanded.

Reversed and remanded.

INGLIS and HUTCHINSON, JJ., concur.